IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **BG PRODUCTS, INC.,** | § | |
| | § | |
| **Plaintiff**, | § | |
| | § | |
| **v.** | § | Case No. 4:15-cv-3136 |
| | § | |
| **STINGER CHEMICAL, LLC,** | § | |
| | § | |
| **Defendant**. | § | |

## COMPLAINT

BG Products, Inc., by and through its counsel, and for its Complaint against Stinger Chemical, LLC alleges and states as follows:

1.      BG Products is a Kansas corporation that maintains a place of business in Sedgwick County, Kansas.

2.      Defendant Stinger Chemical, LLC is a Texas limited liability company that can be served with process through its registered agent, Warren Davis, at its principal place of business at 905 Live Oak Street, Houston, Texas 77003.

3.      The Court has personal jurisdiction over Defendant because it does business in Texas, has its principal place of business in Houston, Texas, and because each of its members reside in this judicial district.  For these same reasons, venue is proper in this Court.

4.      The Court has subject matter jurisdiction by virtue of 28 U.S.C. §§ 1331 and 1332.

4836-2808-9898.1                              1

## FACTUAL ALLEGATIONS

5.      BG Products was formed in 1971.  It manufactures and distributes high quality automotive maintenance products and equipment for automobile fuel systems, engines, transmissions, brakes, power steering, cooling, battery, drive line and climate control systems.

6.      BG Products's trademark has been registered with the United States Patent and Trademark Office since January 20, 1976 as Registration Number 1,030,422.  This trademark is valid and subsisting and since 1971 BG Products has continuously and exclusively utilized this trademark for purposes of identifying the automotive chemicals and products it manufactures and sells to the public.  The registered trademark looks like this:



™

7.      BG Products markets and sells its products internationally through International Distributors, who are assigned a designated and exclusive geographic region.

8.      John Tsou was an International Distributor who was assigned the geographic areas of Malaysia, Taiwan, and certain provinces and municipalities in China.

9.      In September 1995, Tsou entered into a Distributor Agreement with BG Products allowing him to act as BG Products's sole distributor in various provinces and municipalities in China. Tsou and BG Products renewed Tsou's Distributor Agreement a number of times, last in September 2005, and entered additional, substantially identical Distributor Agreements relating

to other geographic areas.  A true and accurate copy of Tsou's Distributor Agreement with BG Products is attached hereto as Exhibit A.

10.     The Distributor Agreements entered between BG Products and Tsou provide, "[BG Products] grants to [Tsou] the exclusive and non-transferrable right and license to use its trade name, trademarks, labels, copyrights and other advertising materials in the marketing of the Market's present and future products throughout the area described above."

11.     The Distributor Agreements entered between BG Products and Tsou provide, "All goodwill established in [Tsou's] area by the distribution of said products shall be deemed the sole and exclusive goodwill of [BG Products] and its products, and upon termination of this agreement, or the prior or earlier termination of [Tsou's] right to import [BG Products's] products, [Tsou] shall immediately discontinue, abandon, cease and desist from the use of [BG Products's] labels, trademarks, trade names and every part thereof, in any and every manner whatsoever."

12.     The Distributor Agreements entered between BG Products and Tsou provide, "[Tsou] shall not at any time during or after the term of this agreement, or after ceasing distribution of [BG Products's] products, use or employ any colorable imitations of [BG Products's] trade names, trademarks or labels, or any part thereof, or anything similar thereto."

13.     Upon information and belief, Defendant and its officers knew about Tsou's Distributor Agreements with BG Products at all times relevant to this lawsuit.

14.     Tsou's contractual relationship with BG Products terminated in July 2012.

15.     On or about March 9, 2013, representatives of BG Products attended a meeting with Shanghai General Motors ("SGM") and Shanghai Dongyu ("Dongyu"), one of Tsou's sub-

distributors that obtained BG Products's products exclusively by and through Tsou.  The purpose of the meeting was to discuss the ramifications of SGM's purchase of counterfeit products, bearing BG Products's trademark on their label, from Dongyu.  SGM's purchases of such counterfeit products occurred before the termination of Tsou's contractual relationship with BG Products.  On or about that same day, Dongyu provided documents to BG Products's representatives that reflected the counterfeit products at issue were manufactured by Defendant.

16.    During a visit to China in or around December 2013, BG Products's representatives found for sale, to the public, product bearing BG Products's trademarks and purporting to be one of its most popular products, BG 44K Fuel System Cleaner.

17.    The bottom of the label of the counterfeit product discovered in December 2013 contained the following details about its manufacture:

**MANUFACTURE** [sic] **BY STINGER CHEMICAL CORP**

**HOUSTON TEXAS MADE IN THE USA**

**UNDER THE LICENSE OF SOHO STAR CORP FOR BG CHINA**

18.    SOHO Star Corp. and BG China are companies owned by Tsou.

19.    Counterfeit products bearing BG Products labels and purportedly manufactured "under the license of SOHO Star for BG China, Taiwan," manufactured as late as April 2014 according to a date stamp on the product can, remain available for sale in the Asian marketplace.

20.    On January 16, 2015 and in the matter of *John Tsou v. BG Products, Inc.,* No. 12-CV-1716, this Court entered judgment in favor of BG Products and against Tsou.  The Court awarded $91,034,370 in damages arising out of Tsou's infringement upon BG Products's trademark and consequent breach of his Distributor Agreement.  The Court also entered a

permanent injunction prohibiting Tsou and any companies in which Tsou has an interest from utilizing BG Products's trademarks or identifying information for any purpose, and requiring Tsou to recall anything bearing BG Products's trademarks or identifying information from the marketplace.

## COUNT I – TRADEMARK INFRINGEMENT
## IN VIOLATION OF LANHAM ACT AND COMMON LAW

21.      Plaintiff incorporates ¶¶ 1 – 20 as if fully restated herein.

22.      BG Products's trademark and trade name are valid, legally protectable marks owned by BG Products.

23.      Defendant utilized BG Products's trademark and trade name in commerce to identify product it manufactured as product manufactured by BG Products.

24.      Defendant did not have BG Products's consent, permission or license to use BG Products's trademarks or trade name.

25.      Defendant utilized BG Products's trademark and trade name with the intent of confusing consumers regarding the origins of products that Defendant manufactured.

26.      Defendant's use of BG Products's trademarks caused consumer confusion regarding the origins of products that Defendant manufactured, has diverted consumers away from genuine BG Products and has diminished BG Products's goodwill and ability to control what is sold under its labels.

27.      As a result of Defendant's acts, BG Products has suffered and continues to suffer damages in an amount to be determined at trial.

28.      Defendant's unauthorized utilization of BG Products's trademarks was willful, and BG Products is entitled to its attorneys' fees and treble damages.

4836-2808-9898.1                              5

29.     Defendant's acts have also irreparably damaged BG Products and, because there is no adequate remedy at law, BG Products is entitled to an injunction prohibiting Defendant's continuing utilization of BG Products's trademarks.

30.     Defendant's conduct violates Section 32 of the Lanham Act, 15 U.S.C. § 1114 and constitutes trademark infringement under the common law.

## COUNT II – UNFAIR COMPETITION
## IN VIOLATION OF LANHAM ACT AND COMMON LAW

31.     Plaintiff incorporates ¶¶ 1 – 30 as if fully restated herein.

32.     Defendant's improper use of BG Products's trademark and trade name in commerce caused confusion and mistake and deceived consumers as to BG Products's affiliation and association with Defendant.

33.     Defendant's improper use of BG Products's trademark and trade name was material because it caused consumers to purchase counterfeit products manufactured by Defendant rather than genuine products manufactured by BG Products.

34.     Defendant's unauthorized utilization of BG Products's trademarks and trade name was willful, and BG Products is entitled to its attorneys' fees and treble damages.

35.     Defendant's acts have also irreparably damaged BG Products and, because there is no adequate remedy at law, BG Products is entitled to an injunction prohibiting Defendant's continuing utilization of BG Products's trademarks and trade name.

36.     Defendant's conduct violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1114 and constitutes unfair competition under the common law.

## COUNT III – VIOLATION OF RICO

37.     Plaintiff incorporates ¶¶ 1 – 36 as if fully restated herein.

4836-2808-9898.1                              6

38.     Title 18 U.S.C. § 1961 defines "racketeering activity" as, among other things, any act that is indictable under 18 U.S.C. § 2320, which punishes one who "traffics in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services."

39.     Defendant, by selling counterfeit products to Tsou, has engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962.

40.     Defendant is a person or enterprise within the meaning of 18 U.S.C. § 1961.

41.     BG Products has been and continues to be damaged by Defendant's racketeering activity and is entitled to treble damages, injunctive relief, fees and costs.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT

42.     Plaintiff incorporates ¶¶ 1 – 41 as if fully restated herein.

43.     The Distributor Agreement between BG Products and Tsou is a valid contract that grants Tsou a license to utilize BG Products's trademarks and trade name only pursuant to Tsou's efforts to market and sell products manufactured by BG Products, prohibits Tsou from utilizing imitations of BG Products's trademarks, and requires Tsou to cease and desist from utilizing BG Products's trademarks and trade names upon the termination of the parties' relationship.

44.     Defendant had actual or constructive knowledge of the Distributor Agreement and its restrictions and requirements.

45.     Defendant's manufacture of counterfeit product to be resold by Tsou caused Tsou to breach his Distributor Agreement with BG Products.

46.     Additionally, upon information and belief, Defendant colluded with Tsou and persuaded Tsou to breach his Distributor Agreement with BG Products.

4836-2808-9898.1                                    7

47.     Because of Defendant's interference with the contract of Tsou and BG Products, BG Products suffered damages in the form of lost past and future sales and loss of goodwill within the marketplace.

48.     Defendant's acts have also irreparably damaged BG Products and, because there is no adequate remedy at law, BG Products is entitled to an injunction prohibiting Defendant's continuing manufacture of products ordered by Tsou, which Tsou will sell utilizing BG Products's trademark and trade names.

## COUNT V – TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS

49.     Plaintiff incorporates ¶¶ 1 – 48 as if fully restated herein.

50.     Because of Defendant's manufacture of counterfeit products that Tsou is selling in Asia, BG Products has been unable to keep, enhance and/or establish business relationships with customers and potential customers interested in purchasing products manufactured by BG Products.

51.     Instead, these customers and potential customers have established or continued business relationships with Tsou and his agents, falsely believing that such business relationship allowed them to purchase authentic products manufactured by BG Products.

52.     Defendant knew that its manufacture of counterfeit product would cause customers and potential customers not to do business with BG Products.

53.     Because of Defendant's interference with the contract of Tsou and BG Products, BG Products suffered damages in the form of lost past and future sales and loss of goodwill within the marketplace.

54.     Defendant's acts have also irreparably damaged BG Products and, because there is no adequate remedy at law, BG Products is entitled to an injunction prohibiting Defendant's continuing manufacture of products ordered by Tsou, which Tsou will sell utilizing BG Products's trademark and trade names.

## PRAYER FOR RELIEF

**WHEREFORE**, BG Products prays that the Court:

a.     Award BG Products trebled monetary damages in excess of $75,000 for its claims against Defendant;

b.     Enjoin Defendant from manufacturing and distributing counterfeit products sold under BG Products's trademark and trade name.

c.     Allow BG Products its costs and attorneys' fees incurred herein; and

d.     Grant such additional affirmative and equitable relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

BG Products, Inc. hereby requests a jury trial in relation to all issues so triable.

4836-2808-9898.1                                              9

Respectfully submitted,

**LEWIS, BRISBOIS, BISGAARD, & SMITH, LLP**


**/s/ Alan L. Rupe**
Alan L. Rupe
Southern District of Texas No. 3422634
1605 N. Waterfront Parkway, Ste. 150
Wichita, KS 67206
(316) 609-7900 (Telephone)
(316) 462-5746 (Facsimile)
Alan.Rupe@lewisbrisbois.com